UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Marcus A. Nussbaum, Esq. (MN9581)
P.O. Box 245599
Brooklyn, NY 11224
marcus.nussbaum@gmail.com
(888)-426-4370
Attorney for Plaintiff, Gabor Ujvari

| | |
|---|---|
| GABOR UJVARI,<br><br>Plaintiff,<br><br>vs.<br><br>1STDIBS.COM, INC.,<br><br>Defendant. | CIVIL ACTION NO. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Gabor Ujvari, ("Plaintiff") by his attorney, Marcus A. Nussbaum, as and for his Complaint against Defendant 1STDIBS.COM, INC., alleges as follows:

## NATURE OF ACTION

1. This is an action in law for breach of contract(s), fraudulent and negligent misrepresentation.

2. As set forth in detail below, this action arises out of certain contracts and guarantees made by defendant to Plaintiff, pursuant to which defendant was obligated to provide plaintiff with employment for a period certain. In reliance upon the representations made by defendant to Plaintiff and further based upon the express terms of the agreements between defendant and Plaintiff, the Plaintiff relocated with his family from Italy to the United Kingdom, incurring numerous expenses in the process.

1

3. Defendant subsequently unlawfully breached said contract(s) and defendant failed to fulfill its legal obligations to provide Plaintiff with stock options in defendant's company, worth approximately $300,000.00.

4. In reliance upon Defendant's assurances to plaintiff about promised benefits in defendant's company, plaintiff did in fact relocate to the United Kingdom from Italy, further incurring significant relocation and moving expenses totaling an equivalent of at least $98,000.

5. Upon plaintiff's arrival in the United Kingdom, defendant attempted to unilaterally alter the terms of its agreement with Plaintiff, and subsequently terminated said agreement in retaliation to Plaintiff's objection to defendant's unilateral alteration of the terms of the agreement.

## I.  PARTIES

6. At all times relevant hereto, Plaintiff GABOR UJVARI (alternatively referred to herein as "Ujvari") was a natural person and resides in Italy and the United Kingdom.

7. At all times relevant hereto, defendant 1STDIBS.COM, INC. (referred to herein as "1stdibs" or "Defendant") was and is a for-profit corporation, formed under the laws of Delaware, and both doing business in and having its principal offices located in New York, New York.

8. At all times relevant hereto, Defendant owned, operated and controlled a subsidiary United Kingdom corporate entity called Online Galleries, Ltd. ("Online Galleries").

9. Upon information and belief, 1stdibs acquired Online Galleries in or about September of 2012.

10. Upon information and belief, with specific regard to 1stdibs' direction and control over the operations of Online Galleries, 1stdibs: (1) had the power to hire and fire employees; (2)

supervised and controlled employee work schedules or conditions of employment; (3) determined rate and method of payment of employees; and (4) maintained employment records. At all relevant times hereto, 1stdibs and Online Galleries have shared common ownership and management and have operated for a common business purpose.

11. As a result of the foregoing, it is therefore alleged that 1stdibs has directly caused the injury suffered by Plaintiff as alleged in this Complaint.

12. At all relevant times hereinafter mentioned, 1stdibs and Online Galleries were united in interest such that they are one and the same.

13. At all relevant times hereinafter mentioned, 1stdibs and Online Galleries were the alter egos of each other.

14. There is an interlocking relationship between 1stdibs and Online Galleries as evidenced by:

      a. common control over both corporations;

      b. negotiations by corporate officers of one corporation on behalf of another corporate entity;

      c. intermingling of activities with substantial disregard of the separate nature of the corporate entities;

      d. serious ambiguity about the manner and capacity in which the various corporate representatives identified herein are acting;

      e. common ownership;

      f. common management;

      g. common financing;

      h. commingling of funds;

      i. commingling of loans;

      j. operations in each others' names;

   k. impermissible personal payments and asset transfers;

   l. usage of the same internet domain names and email addresses registered to said domains.

15. The closeness of their relationships indicates that 1stdibs and Online Galleries are the alter egos of one another and piercing the corporate veil is necessary to avoid injustice and fundamental unfairness.

## II.  JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over the claims in this action pursuant to Article III, Section 2, U.S. Constitution and is premised on complete diversity of citizenship pursuant to 28 U.S.C.S. § 1332, the Plaintiff being a European citizen for diversity purposes and Defendant being a citizen of New York for diversity purposes, and the amount in controversy exceeding $75,000.00.

17. This Court also has supplemental jurisdiction over strictly state law causes of action pursuant to 28 U.S.C.S. § 1367 as such claims are also related to the claims in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

18. This Court has personal jurisdiction over the Defendant because it resides in and/or transacts business in this District.

19. Defendant has created and maintained a 33,000-square-foot shopping facility featuring more than 54 1stdibs dealers, and located at 200 Lexington Avenue, New York, NY 10016.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the defendant resides in this District.

### III.  FACTS

21. 1stdibs is an online gallery and marketplace, which, on its website purports to be: "the premier online luxury marketplace".

22. As explained on the 1stdibs website, the company acquired "UK-based art and antiques portal, Online Galleries Ltd." in or about 2012.

23. On or about July 1, 2011, Ujvari was retained by 1stdibs as a consultant in Europe to lead 1stdibs' expansion in Europe. Ujvari's obligations were to meet with and sign up art and antiques dealers, who would pay 1stdibs a monthly subscription fee in order for them to be listed on the 1stdibs website.

24. On or about July 1, 2011, Ujvari was given a three year contract by 1stdibs for a term from July 1, 2011 to June 30, 2014, with a base salary of $10,000.00 per month, plus a 500 euro commission (starting from February 17, 2012) for each signed account that Ujvari procured.

25. In or around October of 2013 Carmine Bruno (CEO of Online Galleries) called Ujvari and explained that per 1stdibs' requirements and new policy, every European employee and contractor must work under Online Galleries.com, which is 100% owned by 1stdibs.

26. Further, Mr. Bruno expressly represented to Ujvari that Ujvari's job security would not be protected if he remained under the old contract with 1stdibs in New York because 1stdibs hires and fires without cause.

27. Mr. Bruno explained that if Ujvari "sticks" with Online Galleries then his job security would be protected because of the British and European Union employment laws, pursuant to which Bruno explained that Ujvari could not be fired or terminated without cause. Bruno further explained that per the British and European Union employment laws, an employee

must be given two verbal warnings and two written warnings before a company can fire or terminate an employee.

28. On or about November 1, 2013, Ujvari was told by Mr. Bruno that Ujvari must sign a new agreement with Online Galleries which would replace the July 1, 2011 agreement, which Mr. Bruno explained was being terminated. The term on the new agreement would be from November 1, 2013 to December 31, 2014.

29. Immediately subsequent thereto, on or about November 23, 2013, plaintiff Ujvari signed the new agreement with Online Galleries dated November 1, 2013.

30. Carmine Bruno, who was also Managing Director of 1stdibs International, never terminated Ujvari's old contract in writing.

31. Subsequent thereto, Mr. Bruno represented to Ujvari that he wants Ujvari to work as a Sales Director, living and working close to Bruno in the United Kingdom. Bruno also explained that if Ujvari did not agree to Bruno's demand, that Bruno would reconsider the possibility of working with Ujvari going forward, and would likely hire a new Sales Director who is based in the United Kingdom.

32. In or around January of 2014, Carmine Bruno made a verbal proposal to Ujvari at the United Kingdom office of 1stdibs, which stated that Ujvari was to lead the sales for 1stdibs exclusively in Europe, the United Kingdom and the British Islands. As a precondition to working as the lead for sales in Europe, the UK, and the British Islands, it was explained that Ujvari was required to change his residence to the United Kingdom. At that time, he resided in Roma, Italy.

33. In or around March 2014 Carmine Bruno made the same verbal proposal which in the presence of Ujvari's wife Beatrix Bikali. At that time, Mr. Bruno added, in order to further induce Ujvari into relocating to the UK, that "that there will be one day when [Ujvari] will be the

6

Sales Director and [his] job will be to hire sales people in Europe and the United Kingdom, and educate, control and lead them as a sales team, and that [Ujvari] will not have to travel anymore."

34. On or about May 2, 2014 Carmine Bruno made the same written proposal via email, confirming his prior verbal proposals and assurances from January and March of 2014.

35. On or about May 15, 2014, at a dinner in the presence of Carmine Bruno, Mr. David Rosenblatt, CEO of 1stdibs, advised Ujvari of the following in person: (1) that Rosenblatt and 1stdibs were very excited about Ujvari signing up so many great dealers, and doing an excellent job on the field as European Sales Director; (2) that if Ujvari were to relocate his residence to the United Kingdom and work close to Carmine Bruno, that it would be a smart idea, resulting in the company saving on expenses and increasing the sales in United Kingdom; and (3) that Ujvari has a long future with the company, and that Rosenblatt is going to give Ujvari more Stock Options every year.

36. Based upon David Rosenblatt's assurances and Carmine Bruno's written proposal, Ujvari decided to accept the offer and change his residence to the United Kingdom by July 1, 2014.

37. Ujvari arrived to United Kingdom on July 7, 2014.

38. In or around July of 2014, Ujvari entered into an additional agreement with 1stdibs, whereby Ujvari's base salary was agreed to be £6,000 per month, plus a commission for each account sold by Ujvari in the amount of £400 per account, plus an additional 3% commission for any advertising sold by Ujvari in Europe and United Kingdom.

39. Further, the November 1, 2013 contract was amended to change the name from Gabor Ujvari to GT Art Consulting Ltd. (a United Kingdom company solely owned by Ujvari) and the agreement was back dated to June 1st 2014.

40. After arriving in the United Kingdom, Ujvari proceeded to rent a home, which subsequently turned out to be infested with mold and mildew, requiring him to rent a second home.

41. As part of the process for renting the second home, the new landlord required that Ujvari submit to a credit check by a third-party investigation company known as "Keysafe.com", which is a United Kingdom Government registered and licensed letting and vetting agency.

42. As part of the credit check, Keysafe.com required Ujvari to submit employment references.

43. In or around November of 2014, Ujvari asked Carmine Bruno to provide a reference to his new Landlord & Keysafe.com.

44. Immediately subsequent thereto, in violation of the Fraud Act 2006 and Trade Descriptions Act 1968 in England, Carmine Bruno assured and falsely and fraudulently informed Keysafe.com about the following in writing:

- Ujvari's full time employment with 1stdibs as a Consultant;
- Ujvari was confirmed to have a base salary £72,000 per annum;
- Ujvari's commission was £40,000 - £50,000 per annum;
- Ujvari's total income was £110,000 – £120,000 per annum;
- 1stdibs approved GT Art Consulting Ltd.'s contract for 2015, and 1stdibs signed the contract in December of 2014;
- 1stdibs will extend Ujvari's (through GT Art Consulting Ltd.) contract through at least 2016 and/or 2017.

45. Based upon Carmine Bruno's aforesaid written assurances, Ujvari rented a home for £2,500 per month plus a £200 monthly council tax.

8

46. As stated above, Carmine Bruno assured Ujvari that as soon as Ujvari arrives to the United Kingdom permanently and becomes a resident, that he will lead all sales in all categories, and will be selling contracts in Europe and all British Islands.

47. However, as soon as Ujvari arrived to the United Kingdom, Carmine Bruno started to break all assurances and promises given to Ujvari prior to his arrival.

48. In late December of 2014, Ujvari was given a new contract by Carmine Bruno which was to cover the period from January 1, 2015 to December 31, 2015. Under this contract Ujvari was to receive a compensation of £3,333 monthly, plus £400 per all sold accounts as commission.

49. At that time, Ujvari was told by Carmine Bruno that "this decision is final and if you don't like it you are free to go. You are not important anymore, because you built the system for 1stdibs and it is well established and works without you".

50. On or about January 7, 2015, Ujvari was told by Carmine Bruno that the new contract is being finalized by the CFO of 1stdibs and would be finalized by January 15, 2015. Ujvari was instructed to make his 2015 travel plans, which he did in good faith based upon the representations made by Carmine Bruno.

51. On or about January 16, 2015, Carmine Bruno called Ujvari and advised Ujvari that his contract was terminated.

52. Ujvari was never given two verbal warnings, nor was he given two written warnings before he was terminated by Carmine Bruno in January of 2015.

## IV. CAUSES OF ACTION

### COUNT I
### Breach of Contract(s)

53. Plaintiff incorporates and realleges each preceding paragraph of this Complaint as if set forth in full herein.

54. By reason of the aforesaid, Defendant has breached their contracts with Plaintiff.

55. As a direct and proximate result of defendant's breach of contract, Plaintiff suffered damages consisting of lost stock options in defendant's company, worth approximately $300,000.00, plus relocation and moving expenses totaling an equivalent of at least $98,000.

56. By reason of the foregoing, Plaintiff has been directly damaged in the amount of at least $398,000.00, together with all interest, attorneys' fees, costs and disbursements incurred in connection with this action, plus punitive damages, in an amount to be determined at trial.

### COUNT II
### Fraudulent Misrepresentation

57. Plaintiff incorporates and realleges each preceding paragraph of this Complaint as if set forth in full herein.

58. By reason of the aforesaid, Defendant made representations to Plaintiff knowing them to be false, with the intent to fraudulently induce Plaintiff to rely on them by accepting the proposed employment. Defendant's representations as to actions Defendant would take in the future were made with the present intent not to perform.

59. Defendant's representations were material to Plaintiff's decision to accept the proposed employment and relocate to England.

60. Plaintiff reasonably relied on Defendant's representations in deciding to accept employment with Defendant and move to England. Plaintiff did not know that the

representations were false and had no reasonable independent means of ascertaining their truth or falsity.

61. By reason of the foregoing, Plaintiff has been directly damaged in the amount of at least $398,000.00, together with all interest, attorneys' fees, costs and disbursements incurred in connection with this action, plus punitive damages, in an amount to be determined at trial.

## COUNT III
## Negligent Misrepresentation

62. Plaintiff incorporates and realleges each preceding paragraph of this Complaint as if set forth in full herein.

63. By reason of the aforesaid, Defendant made representations to Plaintiff with reckless disregard as to their truth or falsity, with the intent to induce Plaintiff to rely on them by accepting the proposed employment and moving to England. Defendant's representations as to actions Defendants would take in the future were made with the present intent not to perform.

64. Defendant's representations were material to Plaintiff's decision to accept the proposed employment and move to England.

65. Plaintiff reasonably relied on Defendant's representations in deciding to accept employment with Defendant and move to England. Plaintiff did not know that the representations were false and had no reasonable independent means of ascertaining their truth or falsity.

66. By reason of the foregoing, Plaintiff has been directly damaged in the amount of at least $398,000.00, together with all interest, attorneys' fees, costs and disbursements incurred in connection with this action, plus punitive damages, in an amount to be determined at trial.

## V.    **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. Judgment against Defendant for the value of lost stock options which Plaintiff would have been entitled to but for the unlawful termination and breach by Defendant. Such amount shall be not less than $300,000.00;

b. Judgment against Defendant for all reliance damages sustained by Plaintiff as a result of Defendant's fraudulent and negligent misrepresentations made by Plaintiff which caused Plaintiff to incur moving and relocation expenses totaling at least $98,000;

c. Judgment against Defendant for punitive damages in the amount to be determined at trial;

d. Judgment awarding Plaintiff the costs of this action, together with reasonable attorneys' fees; and

e. Such other and further relief as to this Court appears necessary and proper.

Dated: Brooklyn, New York
       March 24, 2016

                                                     Respectfully Submitted,

                                                     */s/ Marcus A. Nussbaum*
                                                     Marcus A. Nussbaum, Esq. (MN9581)
                                                     P.O. Box 245599
                                                     Brooklyn, NY 11224
                                                     marcus.nussbaum@gmail.com
                                                     (888)-426-4370
                                                     Attorneys for Plaintiff, Gabor Ujvari